**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| VERNON ECHOLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13CV271 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Vernon Echols, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Act, and for Supplemental Security Income ("SSI") under Title XVI of the Act. (See Docket Entry 1.)  The Court has before it the certified administrative record (cited herein as "Tr. __") and the parties have filed cross-motions for judgment (Docket Entries 13, 16). Additionally, Plaintiff has filed a Motion to Supplement the Transcript.  (Docket Entry 18.)  Supplementation will be denied, but the case should be remanded for further administrative proceedings.

## PROCEDURAL HISTORY

Plaintiff protectively applied for DIB, a period of disability, and SSI on June 12, 2009, alleging a disability onset date of September 18, 2008. (Tr. 128-29, 130-32.) After denial of the applications initially (Tr. 54-55) and on reconsideration (Tr. 56-57), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 89-90). Plaintiff and his attorney appeared at the hearing. (Tr. 30-53.) The ALJ thereafter determined that Plaintiff did not qualify as disabled within the meaning of the Act. (Tr. 24.) The Appeals Council subsequently denied Plaintiff's request for review, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 1-3.)

In rendering that disability ruling, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act through June 30, 2011.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since September 18, 2008, the alleged onset date . . . .
>
> 3. [Plaintiff] has the following severe impairments: history of anterior and posterior fusions at C5, C6, and C7; discogenic and degenerative disorder of the lumbar spine; history of bilateral carpel tunnel releases; diabetes mellitus; hypertension . . . .
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals

2

> one of the listed impairments in 20 CFR Part 404, Subpart
> P, Appendix 1 . . . .
>
> . . .
>
> 5.  .  .  .  [Plaintiff] has the residual functional
> capacity to perform light work as defined in 20 CFR
> 404.1567(b) and 416.967(b), except that he can
> occasionally stoop, kneel, crouch, and crawl.

(Tr. 18-21 (internal parenthetical citations removed).)

In light of the foregoing findings regarding residual functional capacity, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 24.)  Accordingly, the ALJ ruled that Plaintiff did not have a disability, as defined by the Act, at any time from September 18, 2008, through the date of the decision.  (Tr. 24.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of . . . review of [such a] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  "The courts are not to try the case de novo."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

3

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

4

In confronting that issue, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

specified impairments, or is otherwise incapacitating to the extent
that the claimant does not possess the residual functional capacity
to (4) perform [the claimant's] past work or (5) any other work."
Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2
(4th Cir. 1999).[2]   A finding adverse to a claimant at any of
several points in the SEP forecloses an award and ends the inquiry.
For example, "[t]he first step determines whether the claimant is
engaged in 'substantial gainful activity.' If the claimant is
working, benefits are denied.  The second step determines if the
claimant is 'severely' disabled.  If not, benefits are denied."
Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at
each of the first three steps, "the claimant is disabled." Mastro,
270 F.3d at 177.  Alternatively, if a claimant clears steps one and
two, but falters at step three, i.e., "[i]f a claimant's impairment
is not sufficiently severe to equal or exceed a listed impairment,
the ALJ must assess the claimant's residual functional capacity
('RFC')." Id. at 179.[3]  Step four then requires the ALJ to assess

---

[2] "Through the fourth step, the burden of production and proof is on the
claimant.  If the claimant reaches step five, the burden shifts to the
[government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3] "RFC is a measurement of the most a claimant can do despite [the
claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative
regulations require RFC to reflect claimant's "ability to do sustained work-
related physical and mental activities in a work setting on a regular and
continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an
equivalent work schedule" (internal emphasis and quotation marks omitted)).  The
RFC includes both a "physical exertional or strength limitation" that assesses
the claimant's "ability to do sedentary, light, medium, heavy, or very heavy

whether, based on that RFC, the claimant can perform "past relevant work" ("PRW"); if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

### Motion to Supplement[5]

At the outset, the Court must address Plaintiff's Motion to Supplement the Transcript. (See Docket Entry 18.) Plaintiff's instant Motion seeks to add several medical records from Carolina

---

work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

[5] Plaintiff has not moved for remand under sentence six of 42 U.S.C. § 405(g), only to supplement the record. (See Docket Entry 18.)

Neurosurgery (Docket Entry 19) to the administrative transcript (see Docket Entry 18 at 1).  Plaintiff alleges that he previously provided the medical records to the Appeals Council when he requested review of the ALJ's decision, and the Appeals Council failed to include these documents in the administrative transcript. (Id.)  Plaintiff cites no authority to justify granting the instant Motion.  (Id.)

Defendant opposes Plaintiff's instant Motion and argues that Plaintiff never submitted the medical records to the Appeals Council. (Docket Entry 20.)  In that regard, Defendant points out that, in Plaintiff's request for the Appeals Council to review the ALJ's decision, Plaintiff neither stated that he submitted the medical records, nor included an enclosure line. (Id. at 1 (citing Tr. 8-11).)  Defendant further notes that the Appeals Council did not mention the medical records in its Order listing additional evidence, which listed as received Plaintiff's brief but no other documents. (Id. (citing Tr. 5).)  Finally, Defendant obtained a declaration from an employee of the Appeals Council that affirms Defendant's arguments. (Docket Entry 20-1, ¶ 3(c).)  Plaintiff did not reply. (See Docket Entries dated Sept. 16, 2013, to present.)

In McHugh v. Astrue, No. 09-104-BW, 2009 WL 5218059 (D. Me. Dec. 30, 2009) (unpublished), a district court addressed whether a plaintiff may supplement the record.  In McHugh, the plaintiff claimed she submitted a medical opinion to the Social Security

Administration ("SSA") in connection with her benefits application; however, the SSA apparently never received the medical opinion. Id. at *1. While appealing the ALJ's decision denying benefits, the plaintiff moved the district court to supplement the record with the medical opinion. Id. The defendant opposed the motion and argued that the plaintiff should have known that the SSA did not receive the document. Id. at *2. The district court agreed with the defendant, and, in doing so, noted that, "[a]s a general proposition, it is the duty of a litigant, not a court, judge, or fact-finder, to ensure that evidence meant to be tendered has in fact been offered into evidence." Id. (citing Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001)). Further, the district court found that the plaintiff had an opportunity and a duty to ensure that the document had been received and admitted and the plaintiff failed in doing so. Id. Accordingly, the district court denied the motion and refused to supplement the record. Id.

Similarly, here, Plaintiff had the obligation to ensure that the SSA received any and all evidence he wished to present. After receiving the Order from the SSA noting receipt of Plaintiff's brief, but not the medical records, Plaintiff should have taken further steps to confirm its receipt. Under these circumstances, the Court cannot rely on the newly submitted medical records in evaluating the ALJ's determination of no disability. See id.

## Assignments of Error

Plaintiff lodges three assignments of error. First, Plaintiff contends that, in formulating his RFC, the ALJ improperly evaluated Plaintiff's credibility regarding pain. (Docket Entry 14 at 4-7.) Second, Plaintiff argues that (again, in connection with the RFC) the ALJ erroneously assessed the medical opinions of Dr. Fields and Dr. Davis. (Id. at 7-9.) Finally, Plaintiff asserts that the ALJ failed to consider Plaintiff's Hepatitis C or plantar fasciitis. (Id. at 9.) Defendant disagrees and urges the Court to affirm the ALJ's finding of no disability. (Docket Entry 17 at 15.)

### A. Plaintiff's Credibility

Plaintiff argues that the ALJ improperly evaluated the credibility of Plaintiff's reported pain. (Docket Entry 14 at 4-7.) In that regard, Plaintiff presents a series of objections to the ALJ's analysis and alleges several instances where the ALJ misinterpreted evidence and mischaracterized the record. (Id.) Plaintiff, however, fails to demonstrate any harm by the ALJ's alleged errors, i.e., even if the Court agreed with Plaintiff, he has failed to establish a basis for remand, see Dydra v. Colvin, 47 F. Supp. 3d 318, 326 (M.D.N.C. 2014) ("[I]f an ALJ erroneously considered or failed to consider some evidence, remand is not appropriate unless the claimant was prejudiced."); see also Turner v. Colvin, No. 1:13CV761, 2015 WL 502082, at *11 (M.D.N.C. Feb. 5, 2015) (finding harmless error where the plaintiff did not explain

how proper analysis would have resulted in a more restrictive RFC), recommendation adopted, slip op. (M.D.N.C. Mar. 6, 2015). Regardless, Plaintiff's arguments lack merit.

"[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594. A claimant must first proffer "objective medical evidence showing 'the existence of a medical impairment(s) which . . . could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting 20 C.F.R. §§ 404.1529(b) & 416.929(b)) (emphasis removed). Second, the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work . . . ." Id. at 595. Contrary to Plaintiff's assertion (see Docket Entry 14 at 5 (arguing that by meeting the first step, a claimant "is entitled to substantial credibility regarding the experienced intensity of the pain and it[s] effects")), success at the first step does not entitle the claimant to substantial credibility, or give their testimony great weight, Mascio v. Colvin, 780 F.3d 632, 640 (4th Cir. 2015). Instead, "'under the regulations, . . . evaluation [of the claimant's pain] must take into account not only the claimant's statements about h[is] pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings.'" Felton-Miller v. Astrue, 459 F. App'x 226, 229 (4th Cir. 2011) (quoting Craig, 76 F.3d at 595).

Plaintiff first asserts that the ALJ mistakenly evaluated Plaintiff's back pain on the basis of a CT scan on April 7, 2010. (Docket Entry 14 at 4 (citing Tr. 22).) In that regard, in reviewing the CT scan, the ALJ noted that, although Plaintiff continued to complain of chronic neck and low-back pain, the CT scan revealed progressive fusion. (Tr. 22.) However, Plaintiff faults the ALJ's analysis for not noting the other abnormalities on various vertebrae and, thus, inappropriately discounting Plaintiff's credibility. (Docket Entry 14 at 4.) As Defendant points out, an ALJ has no obligation to discuss every piece of medical evidence. (Docket Entry 17 at 4 (citing Pike v. Astrue, No. 1:09CV448, 2011 WL 9300, at *5 (M.D.N.C. Jan. 3, 2011)).) Additionally, the ALJ appears to have taken the abnormalities into account as he found that Plaintiff still suffered back and neck pain, but not at levels that precluded employment. (Tr. 23.) This aspect of Plaintiff's argument does not entitle him to relief.[6]

Next, Plaintiff contends that the ALJ mistakenly found that his carpal tunnel surgeries successfully resolved his arm pain and numbness. (Docket Entry 14 at 5.) Plaintiff argues that, despite those surgeries, he still displayed ulnar nerve symptoms. (Id.

---

[6] Plaintiff also argues that the ALJ distorted the record by specifically citing a March 2010 report (predating the CT scan) concluding that Plaintiff did not suffer radicular pain. (Docket Entry 14 at 4 (citing Tr. 22).) However, as Defendant points out (Docket Entry 17 at 4-5), the ALJ did not specifically cite the March 2010 report (see Tr. 22-23). Plaintiff did not file a response and address Defendant's point. (See Docket Entries dated Aug. 22, 2013 to present.) Under these circumstances, the Court need not address the matter further.

(citing Tr. 896).)  However, the ALJ has the responsibility to resolve conflicts in the evidence, <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990), and the ALJ did so here.  Although Plaintiff presented with some lingering ulnar symptoms after the surgeries (Tr. 896), Dr. Pool noted that, a week after the surgery on his right wrist, his preoperative carpal tunnel symptoms had improved and that his strength and sensation remained intact (Tr. 901). Moreover, during a February 2011 visit, Dr. Bartko rated Plaintiff's strength as five out of five with generally intact sensation and peripheral joint range of motion without crepitus or tenderness.  (Tr. 906.)  Finally, over the course of three visits, Plaintiff's doctors noted that Plaintiff displayed negative Tinel and Phalen's signs.  (Tr. 917, 919, 921.)  In light of the record, the ALJ reasonably found that the surgery successfully resolved Plaintiff's carpal tunnel symptoms, and substantial evidence supports the ALJ's decision.

Plaintiff also contends that the ALJ erred in evaluating Plaintiff's continued pain and numbness from lumbar spine stenosis. (Docket Entry 14 at 5.)[7]  In that record, Plaintiff points to evidence of his decreased range of motion and persistent pain. (<u>Id.</u> (citing Tr. 916-18).)  Defendant admits that the cited evidence reveals Plaintiff's decreased range of motion, but

---

[7]  In doing so, Plaintiff relies on information outside of the record that the Court cannot consider in determining whether the ALJ erred.

13

Defendant counters that the ALJ appropriately limited Plaintiff to light work. (Docket Entry 17 at 7.) Additionally, the ALJ limited Plaintiff to only occasional stooping, kneeling, crouching, and crawling. (Tr. 21.) Furthermore, as Defendant notes, the evidence cited by Plaintiff does not demonstrate the necessity of greater limitations. (Docket Entry 17 at 7.) Accordingly, the ALJ did not err in analyzing Plaintiff's pain and his decreased range of motion in connection with lumbar spine stenosis.

Plaintiff further disputes the ALJ's treatment of his lower disc degenerative disorder and its effect on his pain. (Docket Entry 14 at 5.) In that regard, Plaintiff claims that the ALJ discounted Plaintiff's credibility regarding his pain because Plaintiff did not undergo corrective surgery. (Id.) However, the ALJ did not specifically find that Plaintiff's failure to have surgery provided a basis for discounting his credibility. (See Tr. 23.) Regardless, the ALJ credited Plaintiff's complaints of chronic pain, but found that it did not rise to a level to preclude work. (Id.) Plaintiff has shown no basis for relief on this front.

Additionally, Plaintiff argues that he did experience pain radiating from his lumbar spine to his legs. (Docket Entry 14 at 6.)[8] Plaintiff observes that his neurologist noted limited range

_____

[8] For part of this argument, Defendant relies on evidence outside the record that the Court cannot consider.

14

of motion and positive straight leg tests demonstrating spinal nerve irritation. (Id. (citing Tr. 906).) Moreover, Plaintiff cites other evidence demonstrating previous straight leg tests and problems with sitting and standing. (Id.) However, Plaintiff has not identified how consideration of these matters reasonably would have affected his RFC in a manner that precludes employment. Accordingly, Plaintiff's arguments lack merit.

Finally, Plaintiff contends that the ALJ erred in finding that the record did not support Plaintiff's allegations of the level of his pain. (Id. at 6-7.) In that regard, the ALJ found that the record did not support Plaintiff's complaints of pain equaling nine or ten out of ten without medication. (Tr. 23.) Plaintiff interprets this finding as a determination that he had not reported any such pain and cites to instances in the record where he rated his pain as a nine or ten. (Docket Entry 14 at 6.) However, the undersigned understands the ALJ's comments to mean that the record does not justify complaints of pain at a level of nine or ten without medication (regardless of whether Plaintiff made such reports). On that basis, Plaintiff presents no grounds to challenge the ALJ's determination. (See id.)

In sum, Plaintiff has shown no entitlement to relief in connection with the ALJ's analysis of Plaintiff's reports of pain.

15

## B.  Medical Opinions

Plaintiff contends that, as part of the RFC formulation, the ALJ erred in disregarding the opinion of Dr. Fields and by failing to address the opinion of Dr. Davis.  (Docket Entry 14 at 7-9.)  An ALJ has the obligation to review all of the medical opinions he or she receives in making his or her decision.  20 C.F.R. §§ 404.1527(b) & 416.927(b).  "If [an] RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  Social Security Regulation ("SSR") 96-8p, 1996 WL 374184, at *7.

### i.  Dr. Fields

Dr. Fields, a consultative examiner for the North Carolina Department of Health and Human Services, examined Plaintiff in July of 2009.  (Tr. 373-76.)  Plaintiff explains that Dr. Fields found, among other things, that Plaintiff had cervical radiculopathy affecting the use of his upper extremities and that his lower back pain affected his ability to walk.  (Docket Entry 14 at 7 (citing Tr. 373-76).)  Plaintiff further points to the tests and evidence supporting Dr. Fields's opinion.  (Id.)  The ALJ disregarded Dr. Fields's opinion because it predated many of Plaintiff's surgeries, and the ALJ found that the surgeries resolved Plaintiff's problems.  (Tr. 23.)

On appeal, Plaintiff relies on his previous assertions that the surgeries did not resolve his underlying medical problems such

16

that the ALJ wrongly disregarded Dr. Fields's opinion. (Id.) As discussed in Part A, a conflict exists in the evidence regarding the efficacy of Plaintiff's surgeries in resolving Plaintiff's cervicular radiculopathy, the ALJ resolved that conflict in favor of finding the surgeries effective, and substantial evidence supports that decision. Accordingly, the ALJ had a basis to afford Dr. Fields's opinion less weight and Plaintiff's challenge on this point has no merit.

However, as Plaintiff points out (Docket Entry 14 at 8), Dr. Fields also noted that Plaintiff suffers from low back pain that prevents him from "comfortable ambulation," (Tr. 375). The ALJ expressly relied on Plaintiff's subsequent surgeries to discount Dr. Fields's opinion relative to Plaintiff's cervicular radiculopathy (see Tr. 23), but that logic does not apply to Plaintiff's lower back pain as Plaintiff has not undergone any corrective surgery for such pain (Docket Entry 14 at 8). Accordingly, substantial evidence does not exist to support the ALJ's treatment of Dr. Fields's opinion relative to Plaintiff's lower back pain.[9] Thus, the Court should remand this case for further consideration of Dr. Fields's opinion relative to Plaintiff's lower back pain.

---

[9] The Court cannot find that the ALJ's failure to address this constitutes harmless error because the ALJ found that Plaintiff could perform light work and light work "requires a good deal of walking or standing," 20 C.F.R. §§ 404.1567(b) & 416.967(b). Thus, the ALJ must address Dr. Fields's opinion regarding Plaintiff's lower back pain, which prevents "comfortable ambulation."

17

ii.  Dr. Davis

According to Plaintiff, the ALJ erred in failing to consider the opinion of Dr. Davis, Plaintiff's treating physician.  (Docket Entry 14 at 8.)[10]   In March of 2009, Dr. Davis prescribed that Plaintiff not bend, stoop, twist, or lift more than 35 pounds. (Tr. 238.)  This opinion conflicts with the ALJ's RFC determination that allows for occasional bending and stooping but requires Plaintiff to lift less weight.  (Tr. 21; see also 20 C.F.R. §§ 404.1567(b) & 416.967(b) (describing light work as involving lifting a maximum of 20 pounds or 10 pounds if frequently lifting and carrying).)  The ALJ did not acknowledge or address Dr. Davis's opinion.  (See Tr. 16-24.)

Defendant concedes that the ALJ failed to consider and evaluate Dr. Davis's opinion; however, Defendant argues that such error qualifies as harmless.  (Docket Entry 17 at 11-12.)  First, Defendant points out that Dr. Davis's finding that Plaintiff could lift 35 pounds exceeded the limitations in light work, which the ALJ found appropriate.  (Id. at 11.)  Although Defendant correctly notes that Dr. Davis's weight limit does exceed the requirements necessary for light work, that fact does not resolve the fundamental differences between Dr. Davis's opinion and the ALJ's findings on bending and stooping.

---

[10] Defendant does not challenge Plaintiff's characterization of Dr. Davis as Plaintiff's treating physician.  (See Docket Entry 17 at 11-12.)

Second, Defendant points out that Dr. Davis's opinion that Plaintiff can lift 35 pounds but not bend or stoop conflicts with Social Security Regulation 83-10, 1983 WL 31251, which generally provides that in order for an individual to lift 20 pounds (for light work) the individual must be able to occasionally bend and stoop. (Docket Entry 17 at 11 (citing SSR 83-10, 1983 WL 31251 at *5-6).) However, Defendant has not cited any authority to support the view that a physician cannot adopt more restrictive bending/stooping limitations than a claimant's general weight-lifting abilities would reflect under SSR 83-10. (See id. at 11-12.) The exertional categories provided by the SSA apply generally, and nothing in the regulations appears to prevent a physician from finding that a claimant can perform some but not all of the required tasks in an exertional category. As such, that aspect of Defendant's harmless error argument lacks merit.

Third, Defendant notes that Dr. Davis's opinion conflicts with the state agency physician who reviewed the record in February 2010 (id. (citing Tr. 883)), and that an ALJ may credit a non-examining physician's opinion over a treating physician (id. (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). Defendant further emphasizes that Dr. Davis's opinion predates some of Plaintiff's later treatment and argues that, as a result, the ALJ's failure to evaluate the opinion qualifies as harmless. (Id. at 12.) However, as a district court in South Carolina observed, "the ALJ, not the

19

Commissioner, must explain why a treating physician's opinion is discounted or rejected." <u>Rivers v. Astrue</u>, No. 4:11-01386-TER, 2012 WL 2590498, at *5 (D.S.C. July 5, 2012) (unpublished). Although rational reasons may exist for the ALJ to assign substantially less weight to Dr. Davis's opinion, the ALJ must explain his reasoning, <u>see</u> 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2), which he failed to do here. Accordingly, the Court should remand this case for further consideration of Dr. Davis's opinion.[11]

## C. Additional Impairments

As a final matter, Plaintiff contends that the ALJ failed to analyze and address Plaintiff's additional alleged impairments of Hepatitis C and plantar fasciitis at step two in the formulation of the RFC. (Docket Entry 14 at 9-10.) Because the undersigned has recommended remand based on the ALJ's failure to address Dr. Fields's opinion regarding Plaintiff's lower back pain and the opinion of Dr. Davis, those matters can be addressed on remand.

---

[11] Notably this case does not present the situation where the ALJ failed to address an opinion that qualified as substantially similar to another physician's. <u>See, e.g.</u>, <u>Caldwell v. Barnhart</u>, 261 F. App'x 188, 191 (11th Cir. 2008). Here, Dr. Davis provided specific work limitations (<u>see</u> Tr. 238) that Dr. Fields did not (<u>see</u> Tr. 373-76). Thus, the Court cannot rely on the ALJ's analysis of Dr. Fields to excuse the absence of discussion of the opinions of Dr. Davis.

## CONCLUSION

Plaintiff has not shown entitlement to expansion of the record, but has established grounds for the Court to remand this case for further administrative proceedings.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Supplement the Transcript (Docket Entry 18) is **DENIED.**

**IT IS THEREFORE RECOMMENDED** that Defendant's decision finding no disability be reversed and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings to evaluate (1) Dr. Fields's opinion regarding Plaintiff's lower back pain, (2) Dr. Davis's opinion, and (3) Plaintiff's alleged impairments of Hepatitis C and plantar fasciitis. As a result, Defendant's Motion for Judgment on the Pleadings (Docket Entry 16) should be denied and Plaintiff's Motion for Judgment Reversing the Commissioner (Docket Entry 13) should be granted in part.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

July 27, 2015